UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
MIGUEL ANGEL ANDRADEZ MATERAN,

                              Petitioner,

           v.

|  |  |
|---|---|
| Raul MALDONADO JR., *Warden, Metropolitan Detention Center*; Judith ALMODOVAR, *New York Field Office Director for U.S. Immigration and Customs Enforcement*; Todd BLANCHE*, Attorney General of the United States*; Markwayne MULLIN*, Secretary of Homeland Security*; and Todd M. LYONS, *Acting Director, U.S. Immigration and Customs Enforcement* | Civil Action No. 26-cv-3185 (Choudhury, J.) |

                              Respondents.
-------------------------------------------------------------------- x

## RESPONDENTS' MEMORANDUM OF LAW IN RESPONSE TO THE ORDER TO SHOW CAUSE WHY A WRIT OF HABEAS SHOULD NOT ISSUE

                              JOSEPH NOCELLA, JR.
                              United States Attorney
                              Eastern District of New York
                              610 Federal Plaza
                              Central Islip, New York 11722

                              May 31, 2026

Megan J. Freismuth
Assistant U.S. Attorney
      (Of Counsel)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 2

ARGUMENT ..................................................................................................................... 4

The Habeas Petition Should Be Denied............................................................................ 4

     I.      Petitioner Has Not Exhausted His Administrative Remedies under
           § 1226(a) ...................................................................................................... 4

     II.    The Due Process Clause Does Not Provide Additional Rights to Petitioner.......... 9

     III.   Petitioner's APA Claim is Not Properly Brought In a Habeas Petition ................ 10

     IV.   Respondents Have Not Violated Petitioner's Fourth Amendment Rights .............11

CONCLUSION................................................................................................................ 13

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Abel v. United States*,
   362 U.S. 217 (1960)..................................................................................................11, 12

*Almonte Rojas v. Genalo*,
   No. 25-cv-6543, 2026 WL 275991 (E.D.N.Y. Feb. 3, 2026)................................... 6, 7

*Arevalo-Guasco v. Dubois*,
   788 Fed Appx. 25 (2d Cir. 2019) ............................................................................... 6

*Beharry v. Ashcroft*,
   329 F.3d 51 (2d Cir. 2003)......................................................................................... 7

*Cabral v. Decker*,
   331 F. Supp. 3d 255 (S.D.N.Y. 2018) ....................................................................... 9

*Capunay Guzman v. Joyce*,
   786 F.Supp.3d 865 (S.D.N.Y. 2025) .................................................................. 6, 8, 9

*Castillo Lachapel v. Joyce*,
   786 F. Supp. 3d 860 (S.D.N.Y. 2025) ................................................................ 6, 7, 8

*Department of Homeland Security v. Thuraissigiam*,
   591 U.S. 103 (2020)................................................................................................. 10

*Fontanelli, as Next Friend of Bernal Garcia v. Francis*,
   No. 25-cv-07715 (JLR), 2025 WL 2773234 (S.D.N.Y. Sept. 29, 2025)................................. 4, 5

*Guzman v. Tippy*,
   130 F.3d 64 (2d Cir. 1997) ...................................................................................... 10

*Hamilton v. Shanahan*,
   No. 09-cv-6869 (SAS), 2009 WL 5173927 ........................................................... 5, 6

*Heikkila v. Barber*,
   345 U.S. 229 (1953)...................................................................................................11

*Hylton v. Shanahan*,
   No. 15-CV-1243, 2015 WL 3604328 (S.D.N.Y. June 9, 2015) ................................. 6

*J.C.G. v. Genalo*,
   No. 24-cv-8755 (JLR), 2025 WL 88831 (S.D.N.Y. Jan. 14, 2025) .......................... 7

*Landon v. Plasencia*,
  459 U.S. 21 (1982)................................................................................................... 10

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)................................................................................................. 10

*McQueen v. City of New York*,
  No. 20-CV-4879, 2023 WL 1995017 (E.D.N.Y. Feb. 14, 2023) ............................... 2

*Michalski v. Decker*,
  279 F. Supp. 3d 487 (S.D.N.Y. 2018) ............................................................... 7, 8, 9

*Monterosa v. Decker*,
  No. 20-cv-02653, 2020 WL 1847771 (S.D.N.Y. Apr. 11, 2020) ......................... 6, 8, 9

*Panetta v. Crowley*,
  460 F.3d 388 (2d Cir. 2006)....................................................................................... 3

*Paz Nativi v. Shanahan*,
  No. 16-cv-8496, 2017 WL 281751 (S.D.N.Y. Jan. 23, 2017)................................. 7, 8

*Portillo Melara v. Tellez*,
  No. 26-cv-1453, 2026 WL 1146054 (E.D.N.Y. Apr. 28, 2026) .................................. 7

*Roman v. Decker*,
  No. 20-cv-3752 (JGK), 2020 WL 4273823 (S.D.N.Y. July 24, 2020) ................ 7, 8, 9

*Shaughnessy v. United States ex rel. Mezei*,
  345 U.S. 206 (1953)................................................................................................. 10

*Trump v. J.G.G.*,
  604 U.S. 670 (2025)............................................................................................10, 11

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950)................................................................................................. 10

*Velasco Lopez v. Decker*,
  978 F.3d 842 (2d Cir. 2020)....................................................................................... 5

*Weinstein v. Albright*,
  261 F.3d 127 (2d. Cir. 2001)................................................................................... 10

**Federal Statutes**

5 U.S.C. § 704...........................................................................................................11

8 U.S.C. § 1226(a) ....................................................................................... 1, 3, 4, 8

8 U.S.C. § 1226(e) ............................................................................................. 5

**State Statutes**

New York State Criminal Procedure Law § 150.20(1)(a)..................................................... 2

**Federal Regulations**

8 C.F.R. § 236.1(c)(8) ...................................................................................................... 4

8 C.F.R. § 236.1(d)(1) ...................................................................................................... 5

8 C.F.R. § 236.1(d)(3) ...................................................................................................... 6

8 C.F.R. § 1003.19(h)(3) .................................................................................................. 5

Respondents, by their attorney, Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, respectfully submit this memorandum of law in opposition to the Petition for Writ of Habeas Corpus, Dkt. No. 1 ("the Petition" or "Pet."), filed by petitioner Miguel Angel Andradez Materan ("Petitioner"), and in response to this Court's Order to Show Cause dated April

**PRELIMINARY STATEMENT**

In the Petition, Petitioner argues that his detention violates the Due Process Clause of the Fifth Amendment. However, Petitioner's habeas petition is premature and should be denied because he has not availed himself of administrative remedies permitted under 8 U.S.C. § 1226(a). On May 4, 2026, Petitioner was arrested by Nassau County Police Department ("NCPD") for violation of NYPL §155.30(1) Grand Larceny in the 4th degree, value of property greater than $1,000, to wit, a large piece of motorized construction equipment. That same day, Petitioner was arrested by Immigration and Customs Enforcement ("ICE"), a component of the U.S. Department of Homeland Security, ("DHS"), pursuant to DHS's discretionary authority under § 1226(a), which allows for the arrest and detention of an alien, like Petitioner, pending a decision on whether he is to be removed from the United States. ICE conducted a custody determination and concluded it would detain Petitioner on the grounds that Petitioner failed to show he was not a danger to property or persons.

Under § 1226(a), Petitioner has a two-level administrative process available to him to seek his release from detention before he can seek relief in habeas from the district court. Specifically, he may request a custody redetermination hearing, referred to as a "bond hearing," before an immigration judge, and then may appeal the immigration judge's decision, if adverse to him, to the Board of Immigration Appeals ("BIA"). Petitioner has already requested a custody redetermination with an immigration judge. This administrative process could render judicial review of the habeas petition unnecessary, but certainly renders it premature.

1

**FACTUAL BACKGROUND**

Petitioner is a native of Venezuela and has been assigned A number 241-430-679. The undersigned has conferred with agency counsel for ICE who has stated that Petitioner is currently detained at the Metropolitan Detention Center in Brooklyn, New York ("MDC"). *See* Declaration of ICE Deportation Officer Demitrios Costakis ("Costakis Decl."), submitted herewith, ¶ 21. At the time of his arrest on May 4, 2026, Petitioner was transported to the Nassau County Correctional Center at 100 Carman Avenue, East Meadow, New York for processing and detention. *Id.* ¶¶ 17; 19. Petitioner was subsequently transferred to Delaney Hall Detention Facility on May 7, 2026. *Id.* at ¶ 20. On May 14, 2026, Petitioner was transferred to the MDC where he currently remains detained. *Id.* ¶ 21.

Petitioner entered the United States without inspection on October 1, 2023, at or near El Paso, Texas. *See* Costakis Decl. ¶ 5.   On the same date, United States Border Patrol placed Petitioner into removal proceedings by issuing a Notice to Appear, Form I-862. *See id.* ¶ 7; Exh. A. Thereafter, Petitioner was released due to lack of approved detention bedspace and served with the Order of Release on Recognizance I-220A ("OREC"), which provided notice to Petitioner with conditions of his release, including a requirement that he "must not violate any local, State, or Federal laws or ordinances." *Id.* ¶ 8; Exh. B.

On May 4, 2026, Petitioner was arrested by the NCPD and charged pursuant to New York State Penal Law ("NYSPL") §155.30(1) Grand Larceny in the 4th degree, value of property greater than $1,000. *Id.* ¶ 14. NCPD issued a desk appearance ticket[1] directing Petitioner to appear on

---

[1] Pursuant to New York State Law, as part of bail reform legislation, it is "mandatory for police to issue a DAT for certain misdemeanors and infractions, as opposed to detaining a suspect prior to arraignment." *McQueen v. City of New York*, No. 20-CV-4879, 2023 WL 1995017, at *1 (E.D.N.Y. Feb. 14, 2023)(Cogan, J.), citing, New York State Criminal Procedure Law § 150.20(1)(a) ("Whenever a police officer is authorized ... to arrest a person without a warrant for an offense other than [certain felonies or violations] ... he shall, except as set out in paragraph (b) of this subdivision ... instead issue to and serve

May 20, 2026 at the First District Court, County of Nassau, Arraignment Part, in Hempstead, New York. Costakis Decl. Exh. F. Thereafter, at approximately 4:17 p.m., NCPD notified ICE of Petitioner's arrest. *Id.* ¶ 15. ICE performed records checks, which verified he had no immigration status or permission to be in the United States and that he was in violation of the condition of the OREC. *Id.* ¶¶ 15-16. At approximately 5:30 p.m., ICE issued a Warrant of Arrest of Alien, Form I-200, pursuant to 8 U.S.C. § 1226(a) and detained Petitioner at approximately 6:20 p.m. *Id.* ¶ 16; Exh. G.

At approximately 7:49 p.m., a custody determination was made and a Notice of Custody Determination I-286 was served on the Petitioner. Declaration of ICE Supervisory Detention and Deportation Officer John C. Diaz ("Diaz Decl."), submitted herewith; Costikas Decl. Exh H. The custody determination involved an interview of Petitioner, and review of his immigration and criminal history. Diaz Decl. ¶ 9. ICE elected to detain Petitioner based upon Petitioner's multiple and recent arrests, which constituted a violation of his conditions of the OREC release, and evidenced that Petitioner would be a danger to property or persons if released. *Id.* ¶ 10. Petitioner marked on the I-286 that he requests an immigration judge review of the custody determination. Costikas Decl. Exh. H.

Petitioner's criminal history also includes the following additional charged offenses. On January 27, 2024, Petitioner was arrested pursuant to NYPL §155.25, Petit Larceny, and NYPL §165.40 Criminal Possession of Stolen Property in the 5th Degree, and NYPL §240.20 Disorderly Conduct. On January 27, 2025, he pled guilty to Disorderly Conduct and he was sentenced to a conditional discharge. *Id.* ¶ 11; Exh. C. On January 24, 2025, Petitioner was arrested in Queens, New York, pursuant to NYPL §165.15(3), Theft of Services and NYPL 220.03 Criminal

---

upon such person an appearance ticket.") (emphasis added). The issuance of a DAT is considered to be a non-custodial arrest. *See Panetta v. Crowley*, 460 F.3d 388, 392 (2d Cir. 2006).

Possession of a Controlled Substance in the 7th Degree, case number CR-003348-25QN. The case was dismissed on March 19, 2025. *Id.* ¶ 12; Exh. D. On March 12, 2025, Petitioner was arrested in Queens, New York pursuant to NYPL 120.00(1) Assault in the Third Degree, and NYPL §240.26(1) Harassment in the Second Degree, case number CR-010010-25QN. On March 19, 2025, Petitioner pled guilty to a NYPL §240.20(1) Disturbance/Violent Behavior and was sentenced to a conditional discharge. *Id.* ¶ 13; Exh. E.

**ARGUMENT**

**The Habeas Petition Should Be Denied**

**I.      Petitioner Has Not Exhausted His Administrative Remedies under § 1226(a)**

Petitioner is properly being detained pursuant to § 1226(a), and his remedy, if any, is administrative. Under § 1226(a), the Government may arrest and detain an alien during his removal proceedings or release him on bond or conditional parole. Section 1226(a) provides, in relevant part, that:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole;

8 U.S.C. § 1226(a). By regulation, immigration officers conduct custodial determinations and may release aliens if the alien meets his burden of showing that he "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). *See Fontanelli, as Next Friend of Bernal Garcia v. Francis*, No. 25-cv-07715 (JLR), 2025 WL

4

2773234, at *4 (S.D.N.Y. Sept. 29, 2025) ("The Government's broad [post-arrest detention] discretion under § 1226(a) has a limitation: before the Government may exercise such discretion to detain a person, § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination, specifically whether the noncitizen is a danger to person or property or persons and is likely to appear for any future proceeding.") (citations and internal quotation marks omitted); *Hamilton v. Shanahan*, No. 09-cv-6869 (SAS), 2009 WL 5173927, at *2 (recognizing that the alien bears the burden of proof). *See also Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020) (referring to "post-arrest custody determination" under § 1226(a).)

Once ICE makes the individualized custody determination, 8 U.S.C. § 1226(e) jurisdictionally bars courts from reviewing that determination. Section 1226(e) provides that "[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by [ICE] under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Thus, "[a] district court has no authority to review ICE's discretionary determinations made under [Section 1226] or otherwise question their propriety." *Id*. (citing 8 U.S.C. § 1226(e)). *Fontanelli*, 2025 WL 2773234, at *4.

After ICE makes the custody determination, an alien can request a custody redetermination (*i.e.*, a bond hearing) by an immigration judge ("IJ") at any time before a final order of removal is issued. *See* 8 C.F.R. § 236.1(d)(1). Under 8 C.F.R. § 1003.19(h)(3), an alien may seek a redetermination of custody conditions set by ICE before an immigration judge must "first demonstrate, by clear and convincing evidence, that release would not pose a danger to other persons or to property. If an alien meets this burden, the alien must further demonstrate, by clear and convincing evidence, that the alien is likely to appear for any scheduled proceeding or

5

interview." *See Hylton v. Shanahan*, No. 15-CV-1243, 2015 WL 3604328, at *7 (S.D.N.Y. June 9, 2015) (declining to shift burden of proof onto government in a bond hearing in immigration court where respondent was detained under § 1226(a)).

If dissatisfied with the IJ decision, the alien can seek review by the BIA. *See* 8 C.F.R. §§ 236.1(d)(3), 1003.19(F), 1003.38, 1236.1(d)(3). *See also Monterosa v. Decker*, No. 20-cv-02653, 2020 WL 1847771, at *3 (S.D.N.Y. Apr. 11, 2020) ("After ICE makes an initial detention decision, any person who is detained has the right to request a bond hearing before an Immigration Judge.").

No judicial review is available. *See Arevalo-Guasco v. Dubois*, 788 Fed Appx. 25, 27 (2d Cir. 2019) (concluding that § 1226(e) precludes judicial review of the IJ's weighing of evidence and factual findings regarding whether [Petitioner-Appellant] is a danger to the community"); *Hamilton*, 2009 WL 5173927, at *3 ("Section 1226(e) specifically divests [district courts] of jurisdiction to review the decisions of the IJ and the BIA (acting on behalf of the Attorney General) regarding the detention of aliens under Section 1226.")

Here, ICE made an individualized custody determination. *See* Diaz Decl. ¶¶ 9-10; Costakis Exh. H. Petitioner has requested review of that custody determination by an IJ. *Id.* Therefore, a review of the custody determination is in the hands of the IJ and Petitioner has not yet exhausted administrative remedies. Numerous courts in this Circuit have held that to the extent that habeas petitioners want to challenge the initial custody determination, ordinarily they must exhaust administrative remedies before seeking federal court intervention. *See, e.g.*, *Almonte Rojas v. Genalo*, No. 25-cv-6543, 2026 WL 275991, at *1 (E.D.N.Y. Feb. 3, 2026) (Komitee, J.) (citing *Castillo Lachapel v. Joyce*, 786 F. Supp. 3d 860, 864 (S.D.N.Y. 2025)); *accord Fontanelli*, 2025 2773224, at *5-*8. *See also Capunay Guzman v. Joyce,* 786 F.Supp.3d 865, 869 (S.D.N.Y. 2025);

6

*J.C.G. v. Genalo*, No. 24-cv-8755 (JLR), 2025 WL 88831, at *4 (S.D.N.Y. Jan. 14, 2025); *Roman v. Decker*, No. 20-cv-3752 (JGK), 2020 WL 4273823, at * 7 (S.D.N.Y. July 24, 2020); *Michalski v. Decker*, 279 F. Supp. 3d 487, 496 (S.D.N.Y. 2018); *Paz Nativi v. Shanahan*, No. 16-cv-8496, 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) ("before immigration detention may be challenged in federal court . . . exhaustion is generally required as a prudential matter" (collecting cases)). The exhaustion requirement "aims to provide the agency with a chance to correct its own errors, 'protect[ ] the authority of administrative agencies,' and otherwise conserve judicial resources by 'limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary.'" *Id.* (*quoting Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.)).

Here, Petitioner has received a custody determination pursuant to § 1226(a) and is required to exhaust his administrative remedies prior to seeking district court intervention and, therefore, the Petition should be denied and this action dismissed. *See, e.g.*, *Portillo Melara v. Tellez*, No. 26-cv-1453, 2026 WL 1146054 (E.D.N.Y. Apr. 28, 2026) (Donnelly, J.); *Almonte Rojas*, 2026 WL 275991, at *1. As the court in *Castillo Lachapel* explained, "[i]f the immigration judge releases [petitioner] on bond, his [habeas petition would be moot . . . . And even if the immigration judge denies bond, [the] petition could be mooted if the Board of Immigration Appeals reverses that determination." 786 F. Supp. 3d at 864 (internal quotation marks and citation omitted).

Nor do any of the recognized exceptions to exhaustion apply here. A district court may in its discretion excuse exhaustion when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile and (4) in certain instances a plaintiff has raised a substantial constitutional question." *See Beharry*, 329 F.3d at 62. Numerous courts in this Circuit have also

7

found that none of these exceptions apply where, as here, an immigration judge or the BIA could release a habeas petitioner detained under 8 U.S.C. § 1226(a) on bond. *See, e.g.*, *Castillo Lachapel*, 2025 WL 1685576 at *3; *Capunay Guzman*, 2025 WL 1696891 at *2-*3; *Monterosa*, 2020 WL 1847771 at *6-*7; *Roman*, 2020 WL 4273823, at *7; *Michalski*, 279 F. Supp. 3d at 496.

With respect to the first exception, as explained above, Petitioner has available administrative remedies—a bond hearing with an immigration judge *and* appeal of the immigration judge's decision, if adverse, to the BIA. *See Castilla Lachapel*, 2025 WL 1685576, at *3 (describing the two levels of administrative review available to petitioner). "Because [Petitioner]'s [potential] bond hearing may provide him with the relief that he seeks—i.e., his release—this Court concludes in the exercise of its discretion that [Petitioner] must exhaust these avenues before seeking judicial relief." *Id.* (internal quotations and citations omitted). *See Michalski*, 279 F. Supp. 3d at 496 (finding that a scheduled bond hearing "scuttles" petitioner's habeas petition because the immigration judge could release him on bond making his habeas petition moot); *Paz Nativi*, 2017 WL 281751, at *2 ("The pendency of a BIA appeal that could potentially moot [petitioner's] habeas petition counsels for the Court to stay its hand until the exhaustion of administrative review in the name of preserving scarce judicial resources and avoiding the possibility of duplicative or conflicting rulings.").

The second exception is also inapplicable. Petitioner cannot show irreparable harm at this time. Now that he has received an individualized custody determination and availed himself of available administrative remedies, jurisdiction lies with the immigration court. *See Capunay Guzman*, 2025 WL 1696891, at *1, *3 (where petitioner had been detained for nineteen days "'[t]he risk of prolonged detention'—as opposed to actual prolonged detention—'does not constitute an

8

irreparable injury that excuses the prudential exhaustion requirement'") (quoting *Roman*, 2020 WL 4273823, at \*8).

Similarly, as to the third exception, Petitioner has not shown that a bond hearing would be futile. *See Michalski*, 279 F. Supp. 3d at 496; *Capunay Guzman*, 2025 WL 1696891, at \*2 (petitioner's "arguments concerning the futility of any bond motion are similarly premature, as he has not yet made a motion for bond"). *See also Cabral v. Decker*, 331 F. Supp. 3d 255, 263 n. 6 (S.D.N.Y. 2018) ("[T]he question of whether the petitioner's yet-to-happen bond hearing complies with due process is not before this Court.").

With respect to the fourth exception, "[m]ere existence of a constitutional issue . . . does not create an automatic exception to an exhaustion requirement." *Monterosa,* 2020 WL 1847771, at \*5. "Thus, when applying this exception, 'courts will endeavor to avoid deciding a constitutional issue if the case might be resolved on a narrower factual basis.'" *Capunay Guzman*, 2025 WL 1696891, at \*3 (quoting *Monterosa*, 2020 WL 1847771, at \*5). As the court in *Capunary Guzman* noted, only a few courts in this Circuit have excused exhaustion under the fourth exception in cases where the petitioner had been detained and denied bond at the bond hearing, or was not yet detained and sought to prevent re-detention. *See id.* (collecting cases).

## II.    The Due Process Clause Does Not Provide Additional Rights to Petitioner

Petitioner claims that his detention violates the procedural Due Process Clause of the Fifth Amendment. Specifically, he claims that his "ICE did not conduct an individualized determination of the propriety of Petition's [sic] detention before it detained him." *See* Pet. ¶ 73. But, again, Petitioner was provided with such an individualized determination, and ICE found him to be a danger to property or persons. *See* Diaz Decl. ¶¶ 9-10. Petitioner identifies no other process that he claims was lacking.

9

In any event, Petitioner's claims fail because for applicants for admission, receiving statutory process, as Petitioner has, suffices for due process. To state a claim for procedural due process, Petitioner must establish: (i) a cognizable liberty or property interest, and (ii) a deprivation of that interest without being afforded the process that is due to the plaintiff. *See Weinstein v. Albright*, 261 F.3d 127, 134 (2d. Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (process owed is flexible and case-specific).

Because Petitioner is an applicant for admission and thus treated for constitutional purposes as if stopped at the border, he is lawfully detained pursuant to § 1226(a), and his procedural due process rights have not been violated. The Supreme Court "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (collecting cases). The Supreme Court has made clear that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)); *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (under the Due Process Clause, applicants for admission have "only those rights regarding admission that Congress has provided by statute."). *See also Guzman v. Tippy*, 130 F.3d 64, 66 (2d Cir. 1997) (the rights of excluded aliens "are determined by the procedures established by Congress and not by the due process protections of the Fifth Amendment").

## III.    Petitioner's APA Claim is Not Properly Brought In a Habeas Petition

As to Petitioner's INA, APA, due process, and Fourth Amendment (to the extent construed as arising under the APA) claims, these claims are not properly asserted in habeas. In *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025), in which claims including due process claims were brought

10

under the APA, the INA and various habeas provisions, the Supreme Court held that where the claims for relief, as here, "necessarily imply the invalidity of their confinement," regardless of whether he requests release from confinement, those claims "fall within the 'core' of the writ of habeas corpus and must be brought in habeas." The Supreme Court's holding is consistent with well-established law that habeas is generally the only possible district court vehicle for challenges brought pursuant to immigration statutes. *Id.* (citing *Heikkila v. Barber*, 345 U.S. 229, 234-35 (1953)). All the claims in this suit constitute a core habeas claim — though they fail for the reasons discussed above—and are not cognizable under the INA or the APA.  Further, by the APA's terms, it is available only for agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, Petitioner's APA claims are independently barred by this limitation. As noted by Justice Kavanaugh's concurrence in *J.G.G.*, "given 5 U.S.C. § 704, which states that claims under the APA are not available when there is another adequate remedy in court, I agree with the Court that habeas corpus, not the APA, is the proper vehicle here." *J.G.G.*, 604 U.S.at 674 (Kavanaugh, J. concurring). Here, as in *J.G.G.*, habeas is an "adequate remedy" through which Petitioner can challenge his detention.

**IV.     Respondents Have Not Violated Petitioner's Fourth Amendment Rights**

To the extent that Petitioner's Fourth Amendment claim is construed as arising directly under the Fourth Amendment, and not under the APA, the claim fails because his civil detention was a reasonable and lawful exercise of federal immigration authority. As the Supreme Court recognized in *Abel v. United States*, 362 U.S. 217 (1960), administrative arrests for deportation have a long-standing statutory history and are distinct from arrests for criminal offenses. The Supreme Court held that that "[s]tatutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time. It would emphasize the disregard for the presumptive respect the Court owes to the validity of Acts of Congress, especially when

confirmed by uncontested historical legitimacy, to bring into question for the first time such a long-sanctioned practice of government at the behest of a party who not only did not challenge the exercise of authority below, but expressly acknowledged its validity." *Abel*, 362 U.S. at 230. Petitioner's arrest was not a criminal arrest requiring a judicial warrant or probable cause of a new crime; rather, it was a civil, administrative arrest carried out pursuant to the broad authority granted by Congress to enforce the nation's immigration laws.

Furthermore, Petitioner has misstated the facts surrounding his arrest and detention by ICE. Petitioner alleges that "On May 4, 2026, Petitioner was driving a vehicle that was stopped by Nassau County Police. The police officer issued a summons for lack of insurance card and driving without a license. The police officer then contacted ICE, which arrived at the location of the traffic stop and took Petitioner into custody." Pet. ¶ 24. These are not the facts of this case. NCPD arrested Petitioner and charged him of violating NYPL §155.30(1) Grand Larceny in the 4th degree, value of property greater than $1,000 because he is alleged to have stolen a large piece of motorized construction equipment. *See* Diaz Decl. ¶ 8.

Petitioner also broadly and conclusorily alleges that "Hispanic individuals are stopped, detained, questioned, and in some cases threatened" and that "his detention was part of a coordinated, indiscriminate sweep of individuals who appeared to be of Hispanic descent in certain communities of New York City based solely on their race." Pet. § 82. But, assuming Petitioner is referring to stops conducted by ICE, ICE was not the entity that initially made contact with Petitioner. NCPD arrested Petitioner first on a criminal charge and then notified ICE that Petitioner was in their custody. Costakis Decl. ¶ 15. Upon NCPD's notification, ICE conducted a record check that revealed that Petitioner was a citizen of Venezuela who had no immigration status or permission to be in the United States. *Id.* Therefore, Petitioner's Fourth Amendment claim is

12

premised upon completely inaccurate facts of what transpired in this matter and should be dismissed.

## **CONCLUSION**

For the reasons stated herein, the Petition should be denied.

Dated: May 31, 2026
       Central Islip, New York

JOSEPH NOCELLA, JR.
United States Attorney

By:   \_\_/s/ Megan J. Freismuth_____
      Megan J. Freismuth
      Assistant United States Attorney
      631-715-7905
      Megan.freismuth@usdoj.gov

13