PROFETA & EISENSTEIN
515 West End Avenue
Suite 1A
New York, New York 10024
(212)577-6500

EMAIL: PE1616@GMAIL.COM

Jethro m. eisenstein
email: jethro19@gmail.com

fred r. profeta, jr.
email: frp713@gmail.com

June 29, 2026

VIA ECF

Honorable Nusrat J. Choudhury
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: Andradez Materan v. Maldonado, et al.
26-cv-3185-NJC

Dear Judge Choudhury:

I am pro bono counsel for Petitioner Miguel Andradez Materan. I have taken the liberty of submitting my reply to the Respondents' Supplemental Memorandum of Law (ECF 19) in letter form.

Courts have consistently held that the Due Process Clause mandates that non-citizens who are released on their own recognizance are entitled to some process before being re-detained. Khabazhah v. U.S. Immigration and Customs Enforcement, 2025 WL 3281514,*5 (S.D.N.Y. November 25, 2025). Respondents do not dispute that 8 U.S.C. §1226(a) and its implementing regulations require ICE officials to make an individualized determination regarding dangers and flight risks.

An individualized determination is one that takes into account the particular facts and circumstances of the case. The Velesaca worksheet (ECF 14), a product of the decision in the class action Velesaca v. Deckert, 458 F.Supp.3d 324 (S.D.N.Y. 2020), instructs ERO Officers to consider any relevant factors, including but not limited to the extent of or seriousness of any criminal arrest, and mitigating factors as well.

The evidence adduced at the hearing on June 5 showed that no such individualized determination regarding dangerousness or flight risk occurred here. Senior Deportation Officer Diaz testified that Petitioner told Diaz that the forklift forks that Petitioner was alleged to have taken were lying next to a garbage can, and Petitioner believed they were abandoned. This information, a mitigating factor that goes directly to the extent or seriousness of the criminal arrest, was not communicated to Deputy Field Director Brian Flanagan, who made the decision to detain based solely on the existence of an arrest charge.

This case resembles Kelly v. Almodovar, 2025 WL 2381591 (S.D.N.Y. August 15, 2025) in which the petitioner, having been released on his own recognizance, was re-detained based on his arrest record. As the Court said there,

> ". . . The mere 'review' of a RAP sheet is not tantamount to an individualized assessment of a suspect's flight risk or dangerousness. If ICE wishes to detain a non-citizen under the detention authority provided by 8 U.S.C. 1226(a), ICE must allow the non-citizen to 'demonstrate to the satisfaction of the officer that [] release would not pose a danger to property or persons and that the [non-citizen] is likely to appear for a future proceeding.' 8 C.F.R. §§1236.1(c)(8), 236.1(c)(a); Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021). It is undisputed that Kelly was not allowed to do this-- indeed, the ICE Officers merely informed Kelly that he would be detained, and when Kelly attempted to make his case, the officers

> shut him down, stating 'that they had been instructed by their supervisors to revoke his release.'"

2025 WL 2381591 at *3.

Petitioner here, like the petitioner in Kelly, was detained in violation of his right to procedural due process.

Finally, it should be noted that Respondents agree that Petitioner is entitled to a bond determination. This Court, after making the findings required under Mapp v. Reno, 241 F.3d 221 (2d Cir. 2001), released Petitioner on bond under restrictive terms to which Respondents consented, including frequent reporting and electronic monitoring.

Respectfully,

Jethro M. Eisenstein

JME/s
cc: All counsel of record VIA ECF